## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KIRBY-SMITH MACHINERY, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO.  CIV-13-374-HE |
| | ) | |
| HOLMGREN ENTERPRISES, INC., | ) | |
| d/b/a VIKING LAND CLEARING, | ) | |
| a/d/b/a VIKING EMERGENCY | ) | |
| SERVICES; and ERIK HOLMGREN, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff Kirby-Smith Machinery, Inc. ("KSMI") sued Holmgren Enterprises, Inc. d/b/a Viking Land Clearing, a/d/b/a Viking Emergency Services ("HE") and Erik Holmgren ("Holmgren") asserting breach of contract, replevin, quasi-contract, implied contract and conversion claims arising out of HE's rental of heavy equipment from KSMI.  Plaintiff also seeks to recover on a guaranty executed by Holmgren.  Both HE and Holmgren have filed motions to dismiss for lack of in personam jurisdiction and improper venue.  As alternative relief they ask that the action be transferred to the Southern District of New York.  Having considered the parties' briefs and evidentiary submissions, the court concludes the motions should be denied.

### Background

Plaintiff is an Oklahoma corporation with its principal place of business in Oklahoma. HE is a New York corporation with its principal place of business in New York and

Holmgren, the president of HE, is a citizen of New York.[1]  HE does not have an office, mailing address, post office box, bank account, telephone listing or advertising listing in Oklahoma and has never performed any work in the state.  Neither HE nor Holmgren own property in Oklahoma and Holmgren does not live, work or have an office, bank account or telephone listing here.

In May 2011, not long after Joplin, Missouri was struck by a tornado, Mike Green, a KSMI employee located at plaintiff's Tulsa County, Oklahoma office, received a call from a person with Viking Site Clearing.[2]  She wanted to rent an excavator, but Green told her that KSMI did not have anything available at that time.  He informed her that three new excavators were on their way from the manufacturer and she said she would call back.  KSMI then faxed, on June 22, 2011, a credit application and agreement to HE, which Holmgren executed as president of HE and also as an individual guarantor of HE's obligations to plaintiff.  A customer of KSMI who has a commercial credit account is allowed to charge rentals, parts and services and be invoiced later.  Rentals are not allowed without a

---

[1]*The facts have been taken from the complaint and the parties' submissions.  Because the jurisdictional question is being decided on the basis of affidavits and other written materials, all factual disputes have been resolved in plaintiff's favor.  Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1070 (10th Cir. 2008).*

[2]*Defendants assert that an HE representative contacted plaintiff's Kansas City, Kansas office about equipment rental.  Plaintiff has offered evidence though, that KSMI does not have an office in Kansas City, but does have some equipment and a sales representative there.  The Kansas City sales rep, Jim Piepenbring, attested that if he had spoken with someone associated with HE, he would have referred the person to the nearest KSMI location that had the type of equipment they wanted, which, in this case, would have been one of plaintiff's Oklahoma locations.  Doc. #12-3. (Page references for briefs and exhibits are to the CM/ECF document, page and exhibit number.)*

commercial credit account.  HE delivered the application to plaintiff in Oklahoma[3] and, on approximately June 22, 2011, KSMI's credit department at its Oklahoma County headquarters, established a customer account for HE.

The HE employee called Green back a few days later and asked that KSMI reserve an excavator for HE and let it know when the equipment was ready to ship.  Green called the employee back the same day and said it was ready.  Holmgren then called Green on Monday, June 27, 2011, and asked that delivery be delayed until June 29, 2011.  On June 30, 2011, the equipment was shipped from KSMI's Oklahoma City equipment yard to HE in Joplin, Missouri, along with a rental contract, which HE never signed.[4]

In July 2011 Holmgren called Green and said he wanted to take the equipment to Alabama.  Green told him that was acceptable to KSMI, but that he would have to pay for the equipment to be returned to Oklahoma.  HE paid the $4600 monthly rental fee until October 15, 2012, sending 17 payments totaling $130,649.86 to KSMI's Oklahoma County office.

No payments were made after October and HE and Holmgren have refused to return the equipment, presently in HE's possession in New York, to plaintiff.  Green talked about payment with Holmgren on November 10, 2011, and, after that, had four telephone conversations with him, sent him four facsimiles, an email and a letter and received a fax and

---

[3]*Defendants assert that Holmgren executed the documents in Missouri, but do not indicate where he then submitted them.*

[4]*HE denies that a rental agreement, bill of lading, delivery ticket or similar document accompanied the delivery of the equipment.*

3

email from Holmgren.  The communications dealt mainly with HE's wish to purchase the equipment and KSMI's efforts to locate and recover it.

Analysis

In personam jurisdiction

The standard for determining the existence of in personam jurisdiction is well established.  To obtain personal jurisdiction over a nonresident defendant in a diversity action, plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment.  Rusakiewicz v. Lowe, 556 F.3d 1095, 1100 (10th Cir. 2009).  As Oklahoma permits the exercise of jurisdiction to the full extent allowed by the Constitution, the question becomes whether maintenance of the suit satisfies due process requirements.  Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000).  Due process is not offended by the exercise of jurisdiction over a nonresident defendant so long as that defendant has "'minimum contacts' with the forum state, such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.'"  Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1070 (10th Cir. 2008) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

A court may exercise general or specific jurisdiction over a company or individual.  Jurisdiction is specific if the claims arise out of or are related to the defendant's contacts with the forum state.  Id.  at 1078.  "General jurisdiction is based on an out-of-state defendant's 'continuous and systematic' contacts with the forum state, and does not require that the claim

4

be related to those contacts." *Id.* (internal citation and quotations omitted). Plaintiff does not assert the court has general jurisdiction over defendants.[5]

Whether a nonresident individual or company has the necessary minimum contacts with the forum state is decided on the particular facts of each case and plaintiff has the burden of establishing the jurisdictional facts. Benton v. Cameco Corp., 375 F.3d 1070 , 1074 (10th Cir. 2004). When the jurisdictional question is decided on the basis of the complaint, affidavits and other written materials, the plaintiff need only make a *prima facie* showing. Dudnikov, 514 F.3d at 1070.

"[T]he 'minimum contacts' standard requires, first, that the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities. *Id.* at 1071 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985). In addition, "exercising personal jurisdiction over defendants must always be consonant with traditional notions of fair play and substantial justice." *Id.*

"[I]n contract cases . . . [the court] sometimes ask[s] whether the defendant 'purposefully availed' itself of the privilege of conducting activities or consummating a transaction in the forum state," while "[i]n the tort context, [the court] often ask[s] whether the nonresident defendant 'purposefully directed' its activities at the forum state" *Id.* Here, defendants allegedly breached their agreements with plaintiff and committed a tort.

---

[5]Plaintiff "acknowledge[d] that invoking general jurisdiction is difficult in this case." Doc. #12, p. 13.

Recognizing that the plaintiff's burden of establishing personal jurisdiction over the defendants "in the preliminary stages of litigation ... is light," Intercon, 205 F.3d at 1247 (internal quotations omitted), the court concludes that, at a minimum, the "purposeful availment test" is satisfied.[6]

"'Purposeful availment analysis turns upon whether the defendant's contacts are attributable to his own actions or solely to the actions of the plaintiff ... [and generally] requires ... affirmative conduct by the defendant which allows or promotes the transaction of business within the forum state.'" Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1535 (10th Cir.1996)(quoting Rambo v. American Southern Ins. Co.,839 F.2d 1415, 1420 (10th Cir.1988)). "[T]he mere foreseeability of consequences within the forum state, without more, is insufficient as a basis for jurisdiction." *Id.*

Defendants argue that they have no contacts with the forum. The court disagrees. HE initiated contact with plaintiff in Oklahoma to inquire about renting the excavator, delivered to plaintiff's Oklahoma office the credit agreement and personal guaranty required to rent the equipment, sent seventeen payments to plaintiff in Oklahoma, called to request and obtained permission from one of plaintiff's Oklahoma employees to move the truck to Alabama, and also had other communications with a KSMI employee, located in the state, regarding the transaction. The equipment also was sent from plaintiff's Oklahoma facility to Missouri where HE was then working. These, more than "[m]erely 'random, fortuitous

---

[6]*Because of that conclusion the court finds it unnecessary to determine whether defendants also "purposefully directed" their activities at the forum state.*

6

or attenuated contacts,'" out of which this lawsuit arises, are "sufficient to establish jurisdiction" over HE. Rusakiewicz, 556 F.3d at 1101 (internal quotations omitted). *See* Benton, 275 F.3d at 1076-78; OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1092-95 (10th Cir. 1998). While perhaps "none of these contacts individually could support a finding of minimum contacts, [the court] find[s] that in the aggregate, [HE's] 'conduct and connection with the forum State [were] such that [it] should reasonably anticipate being haled into court [here].'" Benton, 275 F.3d at 1078 (quoting World-Wide Volkswagen, 444 U.S. at 297).

The question is a bit closer for Holmgren, as part of his conduct was as an officer/employee of HE, rather than in his individual capacity. However, Holmgren is not just an officer, but also "the owner and operator of Holmgren Enterprises, " Doc. #4, ¶5, and his "personal guaranty induced KSMI to accept the Credit Application and Agreement and to rent the Excavator." Doc. #12, p. 11 (citing Doc. #12-1, ¶¶ 7-9). Holmgren should have been aware that his personal guaranty was integral to KSMI's decision to approve HE's credit application, as the guaranty was actually part of the application. He also should have been aware of KSMI's Oklahoma base, as the application included an Oklahoma City post office box and specified that rental payments would be sent to Oklahoma City. "Signing a personal guaranty for a[n] [Oklahoma] business in which one has an economic interest is the sort of conduct and connection with the forum State that makes it reasonable to anticipate being haled into court there when the underlying contract is breached." Nat'l Can Corp. v. K Beverage Co., 674 F.2d 1134, 1138 (6th Cir. 1982) (internal quotations omitted). *See* First

7

City Bank, N.A. v. Air Capitol Aircraft Sales, Inc., 820 F.2d 1127, 1130-31 (10th Cir. 1987).

"This is not a case in which the defendant's only contacts with the forum resulted from 'the mere unilateral activity' of the plaintiff." *Id*. at 1078 (citing World-Wide Volkswagen, 444 U.S. at 298).   The court concludes that Holmgren had sufficient minimum contacts with the state to support an exercise of personal jurisdiction.

Having determined that defendants' actions created sufficient minimum contacts , the court must make the further determination of whether subjecting defendants to suit in Oklahoma would be "reasonable."  "[T]he burden is on the defendant to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. Such cases are rare."  Rusakiewicz, 556 F.3d at 1102 (internal citation and quotations omitted).

In Dudnikov the Tenth Circuit discussed the factors that are traditionally considered when determining "whether the exercise of personal jurisdiction [over the defendant] would 'offend traditional notions of fair play and substantial justice.'" Dudnikov, 514 F.3d at 1080. (quoting  Int'l Shoe, 326 U.S. at 316).  They include:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states [or foreign nations] in furthering fundamental social policies.

*Id*. (quoting  OMI, 149 F.3d at 1095.

Here, as in Dudnikov, "[n]one of these factors, separately or in combination, seem[]

to weigh definitively in favor of defendants." *Id.* This case could be litigated in several states, including Oklahoma, Missouri and New York. "As in any case in which the parties reside in different fora, one side must bear the inconvenience of litigating 'on the road.'" *Id.* at 1081. Clearly there would be some burden on defendants if they are required to litigate in Oklahoma. However, there is no evidence in the record that it would be significant,[7] or "that their defense of this case would be hindered by the territorial limits on [this] court's power to subpoena relevant witnesses." *Id.*

Oklahoma would be a convenient and effective forum for plaintiff and the State does "have an important interest in providing a forum in which [its] residents can seek redress for injuries caused by out-of-state actors." OMI, 149 F.3d at 1096. KSMI has not suggested, though, that a federal court in Missouri or New York "would be unable to adjudicate [its] claims under federal law with equal fairness and effectiveness," Dudnikov, 514 F.3d at 1081, or that the burden of litigating in another forum would "be so overwhelming as to practically foreclose pursuit of the lawsuit." OMI, 149 F.3d at 1097.

Neither of the remaining factors "loom large for either side in this case."[8] Dudnikov, 514

---

[7]*While defendants assert that if this case is litigated in Oklahoma they "would be severely burdened and prejudiced because of the sheer distance between Middletown, New York and Oklahoma," Doc. Nos. 9, p. 5, 10, p. 4, they offer no evidence in this regard. The record does reflect, though, that Holmgren/HE has traveled from New York to Missouri, Alabama and, after this lawsuit was filed, to Oklahoma for work.*

[8]*The fourth factor "asks whether the forum state is the most efficient place to litigate the dispute." Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc., 618 F.3d 1153, 1163 (10th Cir. 2010) (internal quotations omitted). "Key to this inquiry are the location of the witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." Id. (internal quotations omitted). The*

F.3d at 1081.

On balance these factors tip, albeit not overwhelmingly, in favor of plaintiff. Therefore the court concludes that exercising personal jurisdiction over defendants would not "'offend traditional notions of fair play and substantial justice.'" *Id.* at 1070 (quoting <u>Int'l Shoe</u>, 326 U.S. at 316). Subjecting He and Holmgren to the court's jurisdiction would be consonant with the requirements of due process.

<u>Venue</u>

As jurisdiction is based on diversity, venue is proper in "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(a). Defendants assert that venue is improper in the Western District of Oklahoma because neither defendant resides here and the events underlying plaintiff's claims occurred elsewhere, specifically in Missouri or New York.[9] KSMI responds that venue is proper in this judicial district under § 1391(2) because most, if not all, of the events underlying its

_____

*record is insufficient to determine whether Oklahoma, Missouri or New York would be the most efficient location for the trial. Therefore, this factor slightly favors plaintiff.  Id.*

[9]*Venue cannot be based on § 1391(a)(3) because there are other judicial districts where venue would be proper.  See <u>Emp'rs Mut. Cas.</u>, 618 F.3d at 1165 n.10.*

claims occurred in Oklahoma, including the "negotiation and performance under the account and the guaranty agreement, the maintenance of the commercial credit account, [HE]'s failure to pay for substantial equipment rentals, and Defendants' theft of KSMI's $160,000.00 Excavator . . ."  Doc. #12, p. 15.

In Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc., 618 F.3d 1153, 1166 (10th Cir. 2010), the Tenth Circuit applied a two step analysis to determine whether venue is appropriate under § 1391(a)(2).  First, the court "examine[d] the nature of the plaintiff's claims and the acts or omissions underlying those claims."  Id. at 1166.  Second the court "determine[d] whether substantial 'events material to those claims occurred' in the forum district."  Id.  (quoting Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 357 (2d Cir. 2005).

Plaintiff has alleged claims based in contract and tort (conversion).  Some of the acts that underlie these claims took place in the Northern District of Oklahoma, others in Missouri and New York.  However, some events material to plaintiff's claims occurred in the Western District of Oklahoma.[10]  Defendants sent the credit application and guaranty, without which the equipment rental would not have occurred, to KSMI's Oklahoma City office.  Defendant also sent seventeen payments to plaintiff in Oklahoma City and the piece of equipment that HE rented that is the basis for this lawsuit was sent, per HE's request, from Oklahoma City

---

[10]'The Tenth Circuit noted that the appellate courts disagreed when applying the substantiality analysis "over whether to focus solely on the activities of the defendant or to consider the activities of the plaintiff as well."  Emp'rs Mut. Cas., 618 F.3d at 1166 n.11.  Although the Tenth Circuit has not definitely answered the question, it "weighed in on [the] circuit split in a nonbinding order and judgment, Goff v. Hackett Stone Co., No. 98-7137, 1999 WL 397409, at *1 (June 17, 1999)," id., concluding that "the focus [is] on the relevant activities of the defendant, not of the plaintiff."  Goff, 1999 WL 397409, at *1 (internal quotations omitted).

to Missouri.

Venue under § 1391(a)(2) "is not limited to the district [where] the <u>most</u> substantial event or omissions" giving rise to the claim occurred.[11] <u>Emp'rs Mut. Cas.</u>, 618 F.3d at 1165. Rather, the statute "contemplates that venue can be appropriate in more than one district ... [and] permits venue in multiple judicial districts as long as a substantial part of the underlying events took place in those districts." *Id.* (quoting <u>Gulf Ins. Co. v. Glasbrenner</u>, 417 F.3d 353, 356 (2d Cir.2005)).   While recognizing that some of the substantial events underlying plaintiff's claims took place elsewhere, the court nonetheless concludes that plaintiff has shown the occurrence in this district of "acts and omissions that have a close nexus to the alleged claims." *Id.* at 1166 (internal quotations omitted).   Therefore, the substantiality requirement is met and venue is proper in this judicial district.

──────────────────────

[11]*Section 1391(a) was amended in 1990 to broaden the venue provisions.  The commentary following the 1990 revisions to the statute states in part:*

> *The new language accepts venue in a district in which "a substantial part" of the activities (out of which the claim arose) took place, and there may be several districts that qualify as a situs of such "substantial" activities.*

> *The fact that substantial activities took place in district B does not disqualify district A as proper venue as long as "substantial" activities took place in A, too. Indeed, district A should not be disqualified even if it is shown that the activities in district B were more substantial, or even the most substantial. Any other approach would restore the pinpointing problem that created the difficulties under the now discarded "claim arose" standard.  If the selected district's contacts are "substantial," it should make no difference that another's are more so, or the most so.*

*David D. Siegel, Commentary on the 1988 and 1990 Revisions of Section 1391, Subdivision (a), Clause (2), 28 U.S.C.A. § 1391 (1993).*

As for defendants' request that the action be transferred to New York pursuant to 28 U.S.C. § 1404(a),[12] they have failed to meet their burden of demonstrating that "the balance of factors 'strongly favors' a transfer of venue" under the statute. Emp'rs Mut. Cas., 618 F.3d at 1167, n.13.   Their conclusory assertion that the factors pertinent to a proposed transfer under § 1401(a)[13] "clearly show[] that the matter should be transferred to the Southern District of New York, Doc. #9, p. 7, is insufficient to warrant a change of venue. See generally id. at 1169 ("Although Bartile alleges that the majority of potential witnesses are Utah residents and are subject to compulsory process, it has neither identified those witnesses with specificity nor indicated the subject matter of their testimony."). "Merely shifting the inconvenience from one side to the other . . . obviously is not a permissible justification for a change of venue." Id. at 1167 (internal quotations omitted).

The court has determined that both HE and Holmgren are subject to the court's in

---

[12]A district court may transfer an action under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, [and] in the interest of justice, ... to any other district or division where it might have been brought."

[13]The discretionary factors weighed by a court when considering a motion to transfer under § 1404(a) include:

the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and[ ] all other considerations of a practical nature that make a trial easy, expeditious and economical.

Emp'rs Mut. Cas., 618 F.3d at 1167.

personam jurisdiction and that venue is proper in the Western District of Oklahoma.

Accordingly, defendants' motions to dismiss [Doc Nos. 9. 10] are **DENIED**.

   **IT IS SO ORDERED**.

   Dated this 27th day of November, 2013.

_____

JOE HEATON
UNITED STATES DISTRICT JUDGE